IN RE GUARDIANSHIP OF LAWRENCE G. ROLAND.

A. T. BENNETT et al., Appellants; H. W. BRACKNEY, Appellee.

No. 40753.

June 20, 1931.

Wm. T. Stockman, for H. W. Brackney, Substituted Guardian, appellee.

Jepson, Struble & Sifford, for A. T. Bennett, Guardian, appellant.

Milchrist, Schmidt, Marshall & Jepson, for F. W. Kemp, Surety, appellant.

Stason & Knoepfler, for C. F. Lytle, Surety, appellant.

GRIMM, J.—Lawrence G. Roland, a minor, was born on June 19, 1909, and his mother died a few hours after his birth. The boy was raised by his grandmother, Mrs. Harriet Burgoyne. After she had cared for him over ten years, she, on July 9, 1917, filed an application for the appointment of A. T. Bennett as guardian of the estate of said minor. Having been appointed, A. T. Bennett immediately qualified and filed his bond in the amount of $5,000.00, signed by the appellants, C. F. Lytle and F. W. Kemp, as sureties.

On April 5, 1920, Mrs. Burgoyne, the grandmother, filed a claim for $2,026.66 for the care and support of the minor up to that time. The order allowing the claim provided, among other things, as follows:

"And the same is hereby allowed as a valid obligation in its full amount against the estate of the above named ward herein, same to be paid out of the funds herein belonging to said ward before this guardianship proceeding is closed or terminated."

It appears that at the time this order was entered the guardian had in his possession money belonging to the estate in the sum of $3,951.02, which funds were on deposit in the Bennett Loan & Trust Company, a banking corporation of Sioux

City, Iowa. A. T. Bennett, the guardian, was the President of the said Bennett Loan & Trust Company.

In passing, it may be noted that Mrs. Burgoyne's claim contained, among other things, this language:

"She therefore asks that an order be made fixing the time of the hearing of this claim as the court shall see fit, and that upon such hearing that her said claim be allowed and ordered paid by the guardian at such time as she shall ask the same to be paid but that as long as she may see fit to allow or permit the sum owing to her to remain in the hands of the guardian, that he be required to pay no interest to her on such claim but the interest accumulated on the amount owing to her shall be, by the guardian, included with the interest and accumulations belonging to the said ward, but that an order be made directing the guardian to pay to this claimant, such sum or part of her claim, from time to time, as she may desire, but should any money belonging to her remain in the hands of the guardian that the interest thereon and the accumulations thereon shall be credited to the ward and not to this claimant."

On April 16, 1920, a new bond, with new sureties, was filed and substituted in lieu of the original bond. The sureties on the original bond were released by order of the court. C. F. Lytle and F. W. Kemp, the sureties on the original bond, appeared as interveners in the lower court, and they appear here as appellants.

On May 21, 1928, the guardian, A. T. Bennett, filed a report of his receipts and disbursements since the date of his prior report of April 16, 1920. He claims to have had on April 16, 1920, the sum of $3,951.02 and a Liberty Bond of $100.00, and that said funds on April 16, 1920, were on deposit in the Bennett Loan & Trust Company. The said report also contains the following:

"The guardian further states that on April 5, 1920, a hearing was had by this District Court upon the claim which had theretofore been filed by Harriet Burgoyne, the grandmother of said minor. That on such hearing this court allowed the claim of said Harriet Burgoyne in the sum of $2,026.66, which order or judgment of the court is recorded in probate record 40, on page 14. That from and after the date of April 5th, 1920,

it was the understanding of this guardian that the sum of money which had been so allowed to Harriet Burgoyne should be segregated from the balance of said guardianship funds in the care of the guardian and such funds were so segregated and thereafter the sum of $2,026.66 as allowed by the court, was treated and handled by the guardian and by said trust company as the funds of said Harriet Burgoyne and interest was paid to the said Harriet Burgoyne under an agreement had between this guardian, the said Harriet Burgoyne and said Bennett Loan & Trust Company, at the rate of six per cent per annum, payable semi-annually unto the said Harriet Burgoyne. That all interest which has accrued upon said sum belonging to said Harriet Burgoyne has been paid to said Harriet Burgoyne up to and including October 15, 1927.''

The said report also contains the following:

''That computation of interest accrued on the amount on deposit in said Bennett Loan & Trust Company after deducting the several items of expense and allowances hereinbefore shown and by computing interest at 5 per cent per annum payable semi-annually as hereinbefore stated, shows that the total amount now on deposit by said Bennett Loan & Trust Company including principal and interest to June 1st, 1928, is the sum of $1,-870.71; that an itemized statement of said computation is hereto attached and made a part hereof. That there is also at this time on deposit in said Bennett Loan & Trust Company the sum of $2,026.66 which under the order of the court of April 5, 1920, is payable to Harriet Burgoyne with interest thereon from October 15, 1927.''

To this report, objections were filed by the minor through his next friend, Harriet Burgoyne.

On February 2, 1929, the guardian Bennett resigned and H. W. Brackney was appointed as a new and substituted guardian. On May 12, 1929, Brackney, the new guardian, filed separate objections to the report of A. T. Bennett, guardian. On May 12, 1929, the appellants Lytle and Kemp filed their petition of intervention, alleging that though exonerated from liability, they had an interest in the controversy as a result of an action at law then pending against them. They further alleged that the claim of Harriet Burgoyne had been allowed

on April 5, 1920, and that thereafter said sum of money was segregated and full control and custody thereof was assumed by the said Harriet Burgoyne.

It is the contention of the appellants that shortly after April 5, 1920, Bennett, acting as guardian and as president of the Bennett Loan & Trust Company, made an arrangement with Mrs. Burgoyne whereby $2,000.00 of her claim was segregated and placed to her credit at six per cent per annum.

It appears that the Bennett Loan & Trust Company suspended operations prior to 1924.

It is the contention of the appellees that the $2,026.66 was never paid to Mrs. Burgoyne or segregated by the guardian Bennett out of the guardian estate and that therefore Bennett, guardian, must account to Brackney, guardian, not only for the balance shown, according to the said Bennett report, but also for the amount of the Burgoyne claim.

The court found, in substance, that Bennett should not be credited with having paid to Mrs. Burgoyne the $2,026.66, but charged with the total amount, after deducting guardian's fees allowed, in the sum of $250.00.

I. As was said in In re Estate of Michael O'Hara, 204 Iowa, 1331:

"One other general rule applicable to cases of this character is to be borne in mind, and that is that this action is in probate, and is tried as an ordinary action. It is reviewed here as any other ordinary action, upon alleged errors of law only. It is not triable in this court *de novo*. The finding of the trial court has the force and effect of the verdict of a jury, and cannot be disturbed on appeal if there is substantial evidence in the record to support it. Calhoun v. Taylor, supra; Watt v. Robbins, 160 Iowa 587; McGovern v. Heery, 159 Iowa 507; Art-Aseptible Furniture Co. v. Shannon, 159 Iowa 225; Dodge v. Grain Shippers' Mut. Fire Ins. Assn., 176 Iowa 316."

If, then, on the record before us, we find there is substantial evidence in the record warranting the findings made by the trial court, we must affirm that decision.

II. It would serve no good purpose to quote at length from the testimony in the case. The record has been very carefully read, and we reach the conclusion that there is substantial evi-

dence in the record to support the findings of the lower court. We will not undertake to set out the record, but will only comment briefly upon a few of the matters appearing in the record which support the findings of the lower court.

There are some inconsistencies in the position of Harriet Burgoyne.

In the first place, in the claim which she filed, she alleged "that he (the guardian) be required to pay no interest to her on such claim but the interest accumulated on the amount owing to her shall be, by the guardian, included with the interest and accumulations belonging to the said ward."

Notwithstanding this statement in her claim, it appears without contradiction that from September 29, 1920, to November 18, 1927, she received seven installments of interest, six of which were for $60.00, and one of which (February 14, 1922) was for $120.00.

It does not appear that she at any time made any demand for any portion of the principal sum of the claim, nor was any paid to her. The annual interest is claimed by Bennett to have been based upon an allowance of six per cent interest on $2,000.00. The claim was for $2,026.66.

Bennett testified in substance that by agreement with Mrs. Burgoyne, $2,000.00 of her claim was segregated from the minor's estate and placed on deposit in the Bennett Trust Company at six per cent interest. Mrs. Burgoyne denies any such arrangement with Bennett.

It is significant that while the claim was allowed on April 5, 1920, yet on April 16, 1920, when Bennett made a report, there was still no showing of any transfer of the amount of the Burgoyne claim.

In the meantime, the ledger sheet of the trust company is before us certified. It is headed "Lawrence Roland 'Minor,' E. P. Farr, Atty." The sheet contains entries on both sides. The front page opens with September 14, 1918, and closes with June 2, 1924. It shows a balance on June 2, 1924, of $3,715.27. On the reverse page there appears the following: "Lawrence Rowland, Minor, & Mrs. Hattie Burgoyne." On this page are entries from June 30, 1924, to December 30, 1925. There is still a balance of $4,082.87. Apparently the words "& Mrs. Hattie Burgoyne" were entered on the reverse side of the orig-

inal ledger sheet by a former employee of the trust company about June 30, 1924. This is not very definitely shown. Bennett made a copy for appellees' attorneys in his own handwriting, of this ledger sheet and the name of Harriet Burgoyne does not appear thereon.

It is significant that at the time it is claimed the alleged agreement was made, no draft or check against this guardianship account was issued and placed to Mrs. Burgoyne's account. It is equally significant that the guardianship account with the minor was not charged with either the full face of the claim, $2,026.66 or the $2,000.00. It is also significant that aside from the entry made on the reverse side of the ledger sheet showing the minor's account with the bank, there is no account kept with Harriet Burgoyne.

These facts and circumstances, and many others appearing in the record, furnish abundant support for the findings of the lower court.

III. The order of the court directs Bennett, guardian, to pay the full amount of the claim, with interest, to Brackney, guardian of the minor. Appellant complains of this because the decree of the lower court also sustains the objections of Brackney, guardian, including the one that the hearing on the original claim of Harriet Burgoyne is not binding and is not of any force or effect against the guardian or his ward. Harriet Burgoyne was not a party to this hearing.

The petition of the interveners was dismissed.

Manifestly, Bennett and his sureties are not interested in any such controversy. When the money has been turned over in full to Brackney, guardian, the funds will be disposed of under proper orders of the court.

It follows that the cause must be, and is,—Affirmed.

ALBERT, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.